UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23800-Civ-SCOLA/TORRES

VICE CITY MARINA, LLC,

    Plaintiff,

v.

PHILIPPIANS, LLC, in *personam*, and
*E/C THE BLESSING (f/k/a "Richey Rich")*,
A 2000 45' SEA RAY 410 EXPRESS CRUISER,
HULL INDENTIFICATION NUMBER
SERF8112E000, *in rem*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S AMENDED & SUPPLEMENTAL MOTION FOR FINAL
DEFAULT JUDGMENT & ATTORNEYS' FEES & COSTS**

This matter is before the Court on Vice City Marina, LLC's ("Plaintiff") amended and supplemental motion for final default judgment against *In Personam* Defendant, Philippians, LLC (the "Owner") and *In Rem* Defendant, E/C The Blessing (f/k/a "Richey Rich"), a 2000 45' Sea Ray 410 Express Cruiser, Hull Identification Number SERF8112E000 (the "Vessel"). [D.E. 22]. No response was filed in opposition and the time to do so has now passed. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion and the record presented, Plaintiff's [D.E. 22] amended and supplemental motion for final default

1

judgment against Defendants should be **GRANTED in part** and **DENIED in part**.[1]

## I.   BACKGROUND

Plaintiff is a company engaged in providing boat slips, dockage, and vessel storage.   The Owner is a Florida company that owns the Vessel.   On March 1, 2020, the Owner entered into a Dockage Pricing Agreement and its Terms and Conditions (the "DPA") with Plaintiff that, among other things, governs the daily rate for docking the Vessel at Plaintiff's marina in Miami, Florida.   Since March 1, 2020, however, the Vessel has been docked at Plaintiff's Miami marina without the Owner providing any payment whatsoever nor proof of insurance.

On September 14, 2020, Plaintiff filed a foreclosure action, pursuant to 46 U.S.C. § 31301, *et. seq,* to collect damages for necessaries owed by Defendants under the DPA, plus prejudgment interest, *custodia legis* expenses for the Vessel, and all other costs of collection, including court costs and attorneys' fees pursuant to paragraph 19 of the DPA.   [D.E. 1].   To collect the judgment, the complaint seeks to auction the Vessel at a U.S. Marshal's Service foreclosure sale.   *Id.*

On September 30, 2020, the Court issued its Order Appointing Substitute Custodian [D.E. 8] and Order Directing the Issuance of a Warrant of Arrest [D.E. 9] related to the Vessel.   The Clerk of the Court then issued the Warrant of Arrest for the Vessel.   [D.E. 10].   On October 8, 2020, the U.S. Marshal's Service arrested the

---

[1]   On February 25, 2021 the Honorable Robert Scola, Jr. referred Plaintiff's motion to the undersigned Magistrate Judge for disposition.   [D.E. 25].

Vessel and placed Plaintiff in exclusive possession of the Vessel as its ordered substitute custodian. [D.E. 12]. On November 9, 2020, the summons, the complaint, Warrant of Arrest, and various other documents were personally served on the Owners' registered agent and manager, Joseph Caravajales. [D.E. 22, Ex. A].

On December 10, 2020, after Defendants failed to appear or otherwise answer the complaint, Plaintiff moved the Court to enter final default against Defendants. [D.E. 14]. The next day, the Clerk entered a default against Defendants [D.E. 15], and the Court ordered Plaintiff to file a motion for entry of final default judgment against Defendants on or before December 25, 2020. [D.E. 16]. On December 24, 2020, Plaintiff filed a motion for final default judgment against Defendants. [D.E. 18]. Because the proof of final publication of the notice of arrest of the Vessel was not available until January 13, 2021 [D.E. 21], Plaintiff filed this amended and supplemental motion for final default judgment against Defendants on January 28, 2021. [D.E. 22].

## II. APPLICABLE PRINCIPLES AND LAW

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default. *See* Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is

3

that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (internal quotation and citation omitted).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b). *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206) (5th Cir. 1975)). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If the admitted facts are sufficient to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. *See Nishimatsu*, 515 F.2d at 1206; *see also PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004).

Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). Rule 55 does not require an evidentiary hearing on the appropriate amount

4

of damages, and it is within the Court's discretion to choose whether such a hearing should takes place. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011).

### III. ANALYSIS

Plaintiff seeks $78,513.17 plus prejudgment interest for Defendants' failure to pay Plaintiff for the necessaries provided to the Vessel such as docking it pursuant to 46 U.S.C. § 31301, *et seq.* In addition, Plaintiff requests an order for the sale of the Vessel and authorization to have a credit bid in the total amount of its money judgment at such sale in an attempt to satisfy the debt owed to Plaintiff. Further, Plaintiff seeks an award of attorneys' fees in the amount of $14,187.50 and $4,345.00 in costs. We address each request in turn.

#### A. <u>46 U.S.C. § 31301, et. seq.</u>

Under the Federal Maritime Lien Act, a person providing necessaries to a vessel on the order of the owner has a maritime lien on the vessel and may bring a civil action *in rem* to enforce the lien. 46 U.S.C. § 31342(a)(1) and (2); *see also Absolute Marine Towing & Salvage, Inc. v. S/V INIKI*, 2011 WL 1656750, at *1 (M.D. Fla. Apr. 13, 2011), *report and recommendation adopted*, 2011 WL 1656506 (M.D. Fla. Apr. 28, 2011). Plaintiff has submitted an affidavit from Ron Kurzman, principal and manager of Plaintiff, in support of its motion. [D.E. 22, Ex. C]. Kurzman averred that the Owner is liable for $78,513.17 in necessaries for dockage,

5

electricity, permissible custodian fees, and other charges related to the Vessel being docked by Plaintiff. *Id.* Based upon the well-pleaded factual allegations contained in the complaint and evidence of damages establish in the Kurzman affidavit, the Court finds that Plaintiff should be entitled to a final default judgment against Defendants in the amount of $78,513.17 plus prejudgment interest and *custodia legis* expenses for the Vessel while it is under arrest. Further, Plaintiff has not waived its maritime lien to the Vessel arising by operation of law under 46 U.S.C. § 31301, *et seq* and followed Local Admiralty and Maritime Rules in the foreclosure process. For these reasons, Plaintiff should be authorized to sell the Vessel and have a credit bid in the total amount of its money judgment at such sale to satisfy the debt owed to Plaintiff.

### B. *Attorneys' Fees*

Plaintiff next seeks its attorneys' fees related to this action. It relies on Paragraph 19 of the DPA to do so, which states:

> In the event that [Plaintiff] retains counsel and/or a collection agency to recover any unpaid charges from the OWNER or to enforce any terms of this Agreement, then [Plaintiff] shall be entitled to reimbursement from OWNER for its attorneys' fees, collection costs and fees, and other reasonable expenses, etc., including pre-litigation collection efforts, nonjudicial sale, mediation, arbitration, and legal proceedings, including appeals) (sic).

[D.E. 1, Ex. 1]. Because Plaintiff has retained counsel to enforce the DPA in this action, Plaintiff is entitled to reasonable attorneys' fees.

In determining an appropriate fee award, we employ the lodestar method.

6

*See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee"). This method allows for a reasonable estimate of the value of an attorneys' service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id*.

The lodestar method requires a court to first determine an attorneys' reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended. *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *see also Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). When awarding fees using the lodestar method, a court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman v. Hous. Auth. of Cty. of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988) (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Ga. v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999). Courts, however, have considerable discretion when determining whether a party to a case should receive a

fee award. *See Cullens v. Ga. Dept. of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

### 1. *The Reasonable Hourly Rate*

The first step is to consider the reasonable hourly rate. This rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). The relevant market is "the place where the case is filed." *ACLU,* 168 F.3d at 427 (internal quotation marks and citation omitted).

Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Ga. Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974).[2] A movant is required to submit to a court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with the fee applicant to produce "satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). Ultimately, a court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

---

[2]    The 12 *Johnson* factors are as follows:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

Here, Plaintiff seeks an hourly rate for three different attorneys based on their individual levels of experience including: (1) Dale W. Schley II at $500 with 12 years' of experience, (2) Lora Esau at $350 with 2 years' of experience, and (3) Chad R. Laing at $500 with 20 years' experience. Plaintiff seeks $75 an hour for work completed by one paralegal and $125 an hour for another paralegal.

In exercising our own expertise in awarding fees in similar cases, together with a review of the record and supporting materials submitted with the motion, we find that Plaintiff's request for the rates charged by the paralegals are reasonable. *See Fla. Int'l Univ. Bd. of Trustees v. Fla.*, 2019 WL 3412159, at *5 (S.D. Fla. June 17, 2019), *report and recommendation adopted*, 2019 WL 5260154 (S.D. Fla. Aug. 28, 2019) (finding that $525, discounted to $480, was a reasonable rate for an attorney with over 20 years' experience and a rate of $125 reasonable for a paralegal).

However, an adjustment is needed for each attorney. The rate for Mr. Laing is adjusted to $400 as Plaintiff provides no cases where he received a higher rate in a maritime default judgment case like this. Accordingly, Mr. Schley's rate is adjusted to $350 as Plaintiff provides no justification as to why his rate should be the same as the more experienced Mr. Laing. *See Townsend v. Let's of Ocala, LLC*, 2015 WL 4591927, at *2 (M.D. Fla. July 28, 2015), *report and recommendation adopted*, 2015 WL 5132776 (M.D. Fla. Sept. 1, 2015) (finding that a rate of $350 per hour was reasonable for an attorney with over ten years of experience). The rate for Ms. Esau is adjusted to $200, which is the market rate for a second-year attorney in South

Florida *See Zepeda v. Sfilatino LLC*, 2018 WL 2306483, at *2 (S.D. Fla. May 4, 2018), *report and recommendation adopted*, 2018 WL 2305558 (S.D. Fla. May 21, 2018) (reducing $300 to $200 an hour for an attorney with four years of experience); *Intenze Prods., Inc. v. Dead Man Supplies Corp.*, 2017 WL 759036, at *4 (M.D. Fla. Feb. 9, 2017) (finding that a rate of $275 per hour was reasonable for an attorney with approximately four years of experience); *Gray v. Novell, Inc.*, 2012 WL 3871872, at *11 (M.D. Fla. Sept. 6, 2012) (reducing the rate of an attorney with five years of legal experience to $285 per hour).

### 2. *The Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires a court to determine the reasonable number of hours expended. The award must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel.*" *ACLU*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original). A fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide a court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award. *Id.* If a fee applicant fails to exercise required billing judgment, a court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.* As in the analysis of reasonable hourly rates, a court is presumed to be an expert in reviewing the number of hours expended on litigation for

the purpose of attorneys' fees. *Norman*, 836 F.2d at 1303. Accordingly, it is "perfectly proper to award attorneys' fees based solely on affidavits in the record." *Id.* (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

Plaintiff's counsel provided an affidavit of work performed setting forth the nature of services provided and number of hours requested. In reviewing the record independently under the Court's duty to award only those hours that are reasonable, the Court finds that the number of hours expended on certain tasks is excessive. Take, for instance, billing entries related to communicating with opposing counsel, approximately five hours, even though Defendants have not made an appearance in the case. While there is apparently other litigation involving Defendants mentioned in the motion, Plaintiff does not make clear how that is related to billing on this case. There are also over six hours billed related to reviewing Local Rules and Local Forms by Ms. Esau and Mr. Schley. Attorneys should not be billing for duplicated efforts on basic research.

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger,* 10 F.3d at 783). A court may not, however, do both. *See Bivins*, 548 F.3d at 1351-1352 (explaining that "by requiring the district court to conduct either analysis instead of both, we ensure that the district court does not doubly-discount the requested hours").

Based upon all the relevant factors, legal principles, and the attached billing records, the Court finds that a 20% reduction is appropriate to account for the billing deficiencies discussed above. This equates to a total of $3,220 for Mr. Schley (9.2 hours[3] multiplied by $350/hour), $1,968 for Ms. Esau (9.84 hours multiplied by $350/hour), $2,464 for Mr. Laing (6.16 hours multiplied by $400/hour), $216 for one paralegal (2.88 hours multiplied by $75/hour), and $10 for the second paralegal (0.08 hours multiplied by $125/hour) for a grand total of $7,878.00 in fees.

### C. *Costs*

Plaintiff is also entitled to recover costs under the DPA   Plaintiff seeks $400 for the court filing fee, $3,500 for the fee charged by the U.S. Marshal's Service for arresting the Vessel, and $445 for serving Defendants. Because these fees are reasonable and related to enforcing the terms of the DPA, Plaintiff should be awarded $4,345 in costs.

In sum, Plaintiff's amended and supplemental motion for default judgment and attorneys' fees and costs should be **GRANTED in part** and **DENIED in part** with an award of $78,513.17 in damages plus prejudgment interest, $7,878.00 in attorneys' fees, and $4,345.00 in costs.

### IV. *CONCLUSION*

For the foregoing reasons, Plaintiff's [D.E. 22] amended and supplemental

---

[3] Mr. Schley's affidavit states that he billed 12.4 hours, but the underlying detailed invoice shows that he did not charge for 0.9 hours.   We thus reduced by 20% 11.5 hours, not 12.4.

motion for final default judgment and attorneys' fees and costs against Defendants should be **GRANTED in part** and **DENIED in part** with an award of $78,513.17 in damages plus prejudgment interest and *custodia legis* expenses for the Vessel while it is under arrest, $7,878.00 in attorneys' fees, and $4,345.00 in costs. Further, Plaintiff should be authorized to auction the Vessel for sale and use the proceeds to offset the amount owed by the Owner to Plaintiff.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 18th day of March, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge